1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

KEVIN MICHAEL ANDERSON,

Plaintiff,

v.

CAROLYN W. COLVIN,
Commissioner of Social Security,

Defendant.

No. 1:15-CV-03036-JTR

ORDER GRANTING PLAINTIFF'S
MOTION FOR SUMMARY
JUDGMENT

**BEFORE THE COURT** are cross-Motions for Summary Judgment. ECF No. 15, 17. Attorney Randy J. Fair represents Kevin M. Anderson (Plaintiff); Special Assistant United States Attorney Franco L. Becia represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 7. After reviewing the administrative record and the briefs filed by the parties, the Court **GRANTS, in part,** Plaintiff's Motion for Summary Judgment; **DENIES** Defendant's Motion for Summary Judgment; and **REMANDS** the matter to the Commissioner for additional proceedings pursuant to 42 U.S.C. § 405(g).

## JURISDICTION

Plaintiff filed applications for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB) on June 28, 2011, alleging disability since January 1, 2009, due to hepatitis C, chronic obstructive pulmonary disease (COPD), emphysema, and a leaky heart valve. Tr. 144-159, 167, 173. The

applications were denied initially and upon reconsideration.  Tr. 83-89, 93-95.
Administrative Law Judge (ALJ) Virginia M. Robinson held a hearing on January
17, 2013, at which Plaintiff, represented by counsel, and vocational expert (VE)
Trevor Duncan, M.Ed., MBA, CDMS, testified. Tr. 28-61.  The ALJ issued a
partially favorable decision on May 10, 2013, finding Plaintiff disabled as of
January 28, 2013.  Tr. 13-22.  The Appeals Council denied review on January 5,
2015.  Tr. 1-4.  The ALJ's May 10, 2013, decision became the final decision of the
Commissioner, which is appealable to the district court pursuant to 42 U.S.C. §
405(g).  Plaintiff filed this action for judicial review on February 27, 2015.  ECF
No. 1, 5.

## STATEMENT OF FACTS

The facts of the case are set forth in the administrative hearing transcript, the
ALJ's decision, and the briefs of the parties.  They are only briefly summarized
here.

Plaintiff was 45 years old at the alleged date of onset, January 1, 2009.  Tr.
144.  Plaintiff received his GED in 1982 and completed training in auto mechanics
in 1983.  Tr. 174.  He has past work as a boat engineer, flagger, welder, ranch
manager, and construction laborer.  Tr. 174, 197.  Plaintiff reported he stopped
working as a boat engineer in 2006 because the job was seasonal and he was not
called back the next season.  Tr. 37, 173.

In April and May of 2011, Plaintiff underwent pulmonary testing, which
showed he had severe COPD.  Tr. 208-209; 270.  The May 23, 2011, pulmonary
tests showed Plaintiff's diffusing capacity of the lungs for carbon monoxide
(DLCO)[1] level at 17.6 mL/mmHg/min.  Tr. 209.  Subsequently, Plaintiff was

---

[1]"The DLCO measurement provides information about gas transfer
efficiency across the lungs."  Robert D. Rondineli, et al., Guides to the Evaluation
of Permanent Impairment 84 (6th ed., American Medical Association 2008).

ORDER GRANTING PLAINTIFF'S MOTION . . . - 2

treated by Sara I. Cate, M.D., who concluded the pulmonary disease was progressive. Tr. 261. Additionally, Plaintiff was evaluated by Phillip I. Menashe, M.D., a pulmonologist, who diagnosed Plaintiff with severe chronic obstructive pulmonary disease. Tr. 281. In August 2012, Plaintiff had an MRI, which showed he had degenerative disc disease at L4-5, L5-S1 with subligamentous broad-based disc herniations at the L4-5 level mildly impinging the neural foramen, more on the left than the right and at the L5-S1 level with mild impingement at the neural foraminal levels bilaterally with osteoarthritis at L4-5 and L5-S1. Tr. 337.

At the administrative hearing, Plaintiff described lung damage and lumbar spine injury that resulted in chest pains, a sensation of suffocating, dizziness, nausea, back pain, and lack of concentration. Tr. 44-46.

After the hearing, on January 28, 2013, Plaintiff underwent additional pulmonary tests, which showed his DLCO level at 6.9 mL/mmHg/min, or 30% of the predicted normal value (Ref) of 23 mL/mm/Hg/min. Tr. 338.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). The Court reviews the ALJ's determinations of law de novo, deferring to a reasonable interpretation of the statutes. *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000). The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error. *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance. *Id*. at 1098. Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ. *Tackett*, 180 F.3d at 1097. Nevertheless, a decision supported by substantial

ORDER GRANTING PLAINTIFF'S MOTION . . . - 3

evidence will be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.  *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).  If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## SEQUENTIAL EVALUATION PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled.  20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-142 (1987).  In steps one through four, the burden of proof rests on the claimant to establish a prima facie case of entitlement to disability benefits.  *Tackett*, 180 F.3d at 1098-1099.  This burden is met once a claimant establishes that physical or mental impairments prevent him from engaging in his previous occupations.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  If a claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work, and (2) specific jobs exist in the national economy which the claimant can perform.  *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193-1194 (2004).  If claimants cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

## ADMINISTRATIVE DECISION

On May 10, 2013, the ALJ issued a decision finding Plaintiff was disabled as of January 28, 2013, but not prior.

At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since January 1, 2009, the alleged date of onset.  Tr. 15.

At step two, the ALJ determined Plaintiff had the following severe impairments:  COPD, emphysema, degenerative disc disease, and hepatitis C.  Tr.

ORDER GRANTING PLAINTIFF'S MOTION . . . - 4

15.

At step three, the ALJ found that prior to January 28, 2013, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.  Tr. 16.

At step four, the ALJ assessed Plaintiff's residual function capacity prior to January 28, 2013, and determined that from January 1, 2009, to January 27, 2013, he could perform a range of light work with the following limitations:

> [H]e was capable of occasionally climbing ramps or stairs, never climbing ladders, ropes, or scaffolds, frequently balancing, stooping, kneeling, or crouching, and occasionally crawling. The claimant needed to avoid concentrated exposure to extreme cold, extreme heat, excessive vibration, pulmonary irritants (e.g. fumes, odors, dusts, and gases), and workplace hazards (e.g. dangerous machinery), and should not work on unprotected heights.  The claimant was capable of performing simple to moderately complex tasks.

Tr. 16.  The ALJ concluded that Plaintiff was not able to perform his past relevant work.  Tr. 19.

At step five, the ALJ determined that prior to January 28, 2013, considering Plaintiff's age, education, work experience and residual function capacity, and based on the testimony of the vocational expert, there were other jobs that exist in significant numbers in the national economy Plaintiff could perform, including the jobs of production assembler, cashier II, and hand packager.  Tr. 20.  The ALJ concluded Plaintiff was not under a disability within the meaning of the Social Security Act prior to January 28, 2013.  Tr. 21.

The ALJ also found that beginning January 28, 2013, the severity of Plaintiff's impairments met the criteria of Section 3.02(C)(1) of 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525, and 416.925).  Tr. 21.

Therefore, the ALJ found that based on the application for DIB, Plaintiff

was not disabled through December 31, 2009, the date last insured, and based on the application for SSI Plaintiff was disabled beginning January 28, 2013.  Tr. 21.

## ISSUES

The question presented is whether substantial evidence supports the ALJ's decision denying benefits prior to January 28, 2013, and, if so, whether that decision is based on proper legal standards.  Plaintiff contends the ALJ erred by (1) failing to consult a medical expert before finding a January 28, 2013, date of onset; (2) failing to properly consider Plaintiff's credibility prior to January 28, 2013; (3) failing to accord proper weight to Plaintiff's treating physician; (4) failing to find Plaintiff's impairments met listing 3.02 prior to January 28, 2013; and (5) presenting a hypothetical to the vocational expert which failed to account for all of Plaintiff's limitations.

## DISCUSSION

**A.    Onset Date**

Plaintiff asserts that the ALJ erred when she did not consult a medical expert prior to finding that the Plaintiff's disability onset date was January 28, 2013.  ECF No. 15 at 8-10.

On January 28, 2013, after the January 17, 2013, hearing, Plaintiff went to William E. Waltern, M.D., and had additional pulmonary function testing performed.  Tr. 338-340.  The testing revealed the DLCO level of 6.9 mL/mmHg/min, or 30% of the predicted normal value (Ref) of 23 mL/mmHg/min. Tr. 338.  Based on this finding, the ALJ concluded that Plaintiff met the criteria of listing 3.02(C)(1).  Tr. 21.  The ALJ determined that the onset, or the date Plaintiff's impairments met listing level severity, was January 28, 2013, the date of the pulmonary function tests.  Tr. 21.

Social Security Regulation (S.S.R.) 83-20 provides in relevant part that:

In determining the date of onset of disability, the date alleged by the individual should be used if it is consistent with all the evidence

ORDER GRANTING PLAINTIFF'S MOTION . . . - 6

available. . . . the established onset date must be fixed based on the facts and can never be inconsistent with the medical evidence of record.

In some cases, it may be possible, based on the medical evidence to reasonably infer that the onset of a disabling impairment(s) occurred some time prior to the date of the first recorded medical examination, e.g., the date the claimant stopped working. How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in the particular case. This judgment, however, must have a legitimate medical basis. At the hearing, the ALJ should call on the services of a medical advisor when onset must be inferred. If there is information in the file indicating that additional medical evidence concerning onset is available, such evidence should be secured before inferences are made.

The Ninth Circuit has clearly stated that in this context "should" means "must." *Armstrong v. Comm'r of Soc. Sec. Admin.*, 160 F.3d 587, 590 (9th Cir. 1998). If the "medical evidence is not definite concerning the onset date and medical inferences need to be made, SSR 83-20 requires the administrative law judge to call upon the services of a medical advisor and to obtain all evidence which is available to make the determination." *Id.*; *see also Morgan v. Sullivan*, 945 F.2d 1079 (9th Cir. 1991) (reversing in part an ALJ's determination of the onset date of mental disorders without the assistance of a medical expert).

In this case, the record demonstrates that Plaintiff suffered from breathing problems prior to January 28, 2013. He had pulmonary function tests on April 21, 2011, and May 23, 2011, showing severe airway obstruction. Tr. 208, 270.

The ALJ chose the date of the most recent pulmonary testing, January 28, 2013, as the date disability began. Tr. 21. Although Plaintiff was disabled on January 28, 2013, that may not necessarily be the date on which he became disabled. Neither of the pulmonary function tests in 2011 meet the criteria for listing 3.02, requiring a FEV1 of 1.55 L, BTPS or less, a FVC of 1.75 L, BTPS or less, or a DLCO of less than 10.5 ml/min/mm Hg or less than 40% of predicted normal value. 20 C.F.R. § Part 404, Subpart P, Appendix 1. But, the January 28, 2013, pulmonary function test does meet the criteria for listing 3.02 with a DLCO of 6.9 mL/mmHg/min, or 30% of predicted normal value. Tr. 338. There are no

pulmonary function tests between May 23, 2011, and January 28, 2013, in the record.[2]  However, the medical records between the May 2011 testing and the January 2013 testing shows a progression of the pulmonary disease:  on September 29, 2011, Dr. Cate stated that "[h]is pulmonary disease is progressive," Tr. 261; on December 6, 2011, Dr. Cate stated that Plaintiff's "lungs [are] clear but decrease in breath sounds," Tr. 263; on January 31, 2012, Plaintiff presented with an exacerbation of his COPD, Tr. 265; and on March 20, 2012, Plaintiff reported he was breathing better after seeing a new pulmonologist and changing his medication, but a physical exam revealed expiratory wheezes were present.  Tr. 268-269.  Exactly when Plaintiff's various impairments became disabling is unclear.  Therefore, the ALJ was required to call a medical expert to aide in determining the date of onset.  *Morgan*, 945 F.2d at 1082-83; *DeLorme v. Sullivan*, 924 F.2d 841, 848-849 (9th Cir. 1991).

Defendant argues that the ALJ did not err in refusing to call a medical expert because Armstrong did not fulfill his burden of proving that he was disabled prior to January 28, 2013.  ECF No. 17 at 17-18.  "If, as [Defendant] argues, an ALJ does not have to call a medical expert unless the claimant has fulfilled his burden of proving an onset date, SSR 83-20 would have no application.  If the claimant proved a date, there would be no need to call a medical expert, and if the claimant, as in this case, was unable to prove a date, then the ALJ would deny disability

---

[2]The ALJ references testing performed by Dr. Menashe on March 15, 2012, Tr. 16, but the reference to testing in Dr. Menashe's March 15, 2012, report is the doctor repeating the results from the May 23, 2011, pulmonary testing.  *See* Tr. 209, 281.  Dr. Menashe never stated he performed any of the testing, instead he stated Plaintiff "has a reported FEV1 of 1.9L."  Tr. 281.  Additionally, Plaintiff testified that Dr. Menashe never performed any pulmonary testing.  Tr. 49.

ORDER GRANTING PLAINTIFF'S MOTION . . . - 8

benefits because the claimant failed to carry his burden." *Armstrong*, 160 F.3d at 590. In *Armstrong*, the Court refused to interpret the claimant's burden of proof at steps one through four as eliminating S.S.R. 83-20's requirement. *Id.*

Consequently, the Court finds that the record is ambiguous as to the onset date, and, on remand, the ALJ must call a medical expert to assist in determining Plaintiff's onset date. It is important to note on remand that S.S.R. 83-20 "only requires that the ALJ assist the claimant in creating a complete record," and does not relieve Plaintiff of his burden of proof. *Id.*

**B. Credibility**

Plaintiff contests the ALJ's adverse credibility determination. ECF No. 15 at 15-18.

It is generally the province of the ALJ to make credibility determinations, *Andrews*, 53 F.3d at 1039, but the ALJ's findings must be supported by specific cogent reasons, *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "specific, clear and convincing." *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996); *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834.

The ALJ found Plaintiff's statements prior to January 28, 2013, concerning the intensity, persistence, and limiting effects of his symptoms less than fully credible. Tr. 17. The ALJ determined that Plaintiff was less than fully credible because his symptom reporting was contrary to (1) the limited medical treatment, (2) the clinical evidence, (3) claimant's smoking, and (4) the reason Plaintiff stopped working. Tr. 17-18.

First, the ALJ found that Plaintiff's gaps in medical treatment "raise a significant credibility concern." Tr. 17-18. A failure to obtain treatment does not

support an adverse credibility finding when the failure is a result of an inability to afford treatment. *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). Dr. Cate states on April 21, 2011, that Plaintiff does "not have money for medicine today." Tr. 205. Additionally, Plaintiff testified that he did not have medical insurance and it affected his ability to receive medical testing. Tr. 49-50. Therefore, this is not a specific, clear and convincing reason to find Plaintiff less than fully credible.

Second, the ALJ found that Plaintiff's reported symptoms were inconsistent with the clinic evidence. Tr. 18. Although it cannot serve as the sole ground for rejecting a claimant's credibility, objective medical evidence is a "relevant factor in determining the severity of the claimant's pain and its disabling effects." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Plaintiff did not challenge this finding in his opening brief. ECF No. 15. Therefore, Plaintiff waived the issue. *See Carmickle v. Comm'r or Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008).

Third, the ALJ determined that Plaintiff's continued smoking despite medical advice to stop supported her unfavorable credibility determination. Tr. 18. A claimant's failure to comply with a diagnosis to quit smoking "is an unreliable basis on which to rest a credibility determination." *Shramek v. Apfel*, 226 F.3d 809, 813 (7th Cir. 2000). Given the addictive nature of cigarettes, this reason is not sufficiently "clear and convincing" to reject credibility. *See, e.g., Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009). Even though Plaintiff's smoking may have contributed to his symptoms, the fact that he did not quit as recommended by his doctors does not necessarily undermine his credibility. The Court concludes Plaintiff's failure to quit smoking is not a clear and convincing reason for discounting Plaintiff's credibility.

Finally, the ALJ found that Plaintiff's report that he stopped working in 2006 because his job was seasonal and not because of a medical condition "casts further doubt on [his] alleged severity," and "raises the question of whether [his]

continued unemployment is actually due to a medical condition." Tr. 18.  A claimant's poor work history can be a specific, clear and convincing reason negatively affecting credibility regarding the inability to work.  *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002).  *See Bruton v. Massanari*, 268 F.3d 824, 828 (9th Cir. 2001) (ALJ properly relied on the fact that claimant left his job because he was laid off, rather than because he was injured, in finding the claimant not entirely credible).  Here, the record reveals that claimant stopped working in 2006, and drew unemployment benefits in 2010 and 2011.  Tr. 163-166.  As such, it was reasonable for the ALJ to question Plaintiff's credibility regarding his ability to work.  It is not the role of the Court to second-guess the ALJ.  If evidence supports more than one rational interpretation, the court must uphold the decision of the ALJ.  *Tackett*, 180 F.3d at 1097.  Therefore, the ALJ's final reason meets the clear and convincing standard.

Nevertheless, considering the case is being remanded for additional proceedings and the errors set forth above, the ALJ is to make a new credibility determination on remand supported by specific, clear and convincing reasons.

## C.    Evaluation of Medical Evidence

Plaintiff argues the ALJ failed to properly consider and weigh the medical opinion expressed by his treating physician, Dr. Cate.  ECF No. 15 at 12-15.

The record contains four opinions from Dr. Cate.  The first was on September 29, 2011, stating that Plaintiff "would possibly be able to work if he could be retrained in a sedentary job.  I would recommend disability for now, unless he can obtain appropriate retraining."  Tr. 261.  The remaining three are all dated June 10, 2012, and include (1) an affidavit stating that Plaintiff met listing 3.02(A) based on an FEV1 of 1.50 L, BTPS as of April 20, 2011, Tr. 285-289; (2) a physical medical source statement providing an residual function capacity, Tr. 290-293; and (3) a statement that from April 20, 2011, to the present, Plaintiff could not perform full time gainful work.  Tr. 294-295.  The ALJ did not find these

ORDER GRANTING PLAINTIFF'S MOTION . . . - 11

opinions "to be persuasive as [they are] inconsistent with the claimant's reports of relief with medication management along with infrequent medical visits to Dr. Cate or other medical provider as discussed above." Tr. 19. Additionally, the ALJ found that Dr. Cate misstated Dr. Menashe's report in her affidavit. Tr. 16.

In weighing medical source opinions, the ALJ should distinguish between three different types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and, (3) nonexamining physicians who neither treat nor examine the claimant. *Lester*, 81 F.3d at 830. The ALJ should give more weight to the opinion of a treating physician than to the opinion of an examining physician. *Orn*, 495 F.3d at 631. The ALJ should give more weight to the opinion of an examining physician than to the opinion of a nonexamining physician. *Id.*

When a treating physician's opinion is not contradicted by another physician, the ALJ may reject the opinion only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). When a treating physician's opinion is contradicted by another physician, the ALJ is only required to provide "specific and legitimate reasons" for rejecting the opinion of the first physician. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983).

Plaintiff does not assert which of the two standards of review is appropriate in this case, while Defendant asserts that the specific and legitimate standard applies. ECF No. 15 at 12; ECF No. 17 at 15. There are two opinions regarding Plaintiff's physical functional capacity in the record besides Dr. Cate's. These opinions are from State agency reviewers, Burt McGowan[3] on July 20, 2011, and Norman Stanley, M.D., on November 18, 2011. Tr. 71-73; 79-80; 220-227. Both opinions limit Plaintiff to a light exertional level. *Id.* Mr. McGowan concluded

---

[3]There are no credentials provided behind Mr. McGowan's signature. Tr. 227.

1    Plaintiff would have postural limitations and environmental limitations, while Dr.

2    Stanley concluded Plaintiff would only have environmental limitations. *Id*.

3    Considering Plaintiff does not assert the clear and convincing standard applies, the

4    Court concludes that the specific and legitimate standard is appropriate in this case.

5    *See Carmickle*, 533 F.3d at 1161 n.2 (The failure to challenge an issue in the

6    opening brief waives the issue).

7            The first reason the ALJ gave for rejecting Dr. Cate's opinion, that it is

8    inconsistent with Plaintiff reports of symptom relief with medical management, is

9    not a specific and legitimate reason.  In support of this assertion, the ALJ cites to a

10   May 12, 2011, report stating that the COPD had "improved on combivent" and a

11   September 29, 2011, report in which Plaintiff stated "[h]e has intermittent chest

12   tightness relieved by his albuterol."  Tr. 203; 261.

13           In determining whether the ALJ's decision is supported by substantial

14   evidence, the administrative record must be reviewed as a whole, weighing both

15   the evidence that supports and the evidence that detracts from the ALJ's

16   conclusion. *Mangallanes v. Brown*, 881 F.2d 747, 750 (9th Cir. 1989).  In

17   reviewing the decision as a whole, the record does not support the ALJ's finding

18   that medical management relieved symptoms.  In fact, it shows the progression of

19   the pulmonary disease.  In the same report the ALJ cites to support her finding that

20   the symptoms are relieved by medication management, September 29, 2011, Dr.

21   Cate stated that "[h]is pulmonary disease is progressive," Tr. 261.  Additionally,

22   the objective pulmonary testing reveals that between May 23, 2011, and January

23   28, 2013, Plaintiff's pulmonary disease progressed substantially with the DLCO

24   going from 17.6 to 6.9 mL/mmHg/min.  Tr. 209; 338.  Therefore, the ALJ's

25   conclusion that symptoms were controlled by medication is not supported by the

26   record as a whole, and this is not a specific and legitimate reason to reject Dr.

27   Cate's opinion.

28           The second reason the ALJ gave for rejecting Dr. Cate's opinion, that it is

inconsistent with Plaintiff's infrequent medical visits to Dr. Cate or other medical providers, is also not a specific and legitimate reason.  The Ninth Circuit has repeatedly held that the unexplained or inadequately explained failure to seek treatment can be used to undermine the credibility of a plaintiff's statements. *Smolen*, 80 F.3d at 1284; *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014); *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).  But, it cannot be used to undermine the credibility of an examining physician because a physician does not hold any burden of proof in a social security claim.  Plaintiff carries the burden of proving disability at steps one through four.  *Tackett*, 180 F.3d at 1098-1099. The ALJ has a duty to develop the record when the record is insufficient to support a decision on the claim.  *Mayes v. Massanari*, 276 F.3d 453, 459-460 (9th Cir. 2001).  A physician does not hold the burden of proof or the duty to develop. Therefore, finding a physician less than fully credible due to her failure to fulfill a nonexistent burden or duty is not a specific and legitimate reason for rejecting her opinion.

Additionally, the ALJ asserts that Dr. Cate misstated the FEV1 value from Dr. Menashe's March 15, 2012, report, which was 1.9L, as 1.5L on her affidavit. Tr. 16, 289.  Therefore, the ALJ gave Dr. Cate's opinion "no weight." Tr. 16. Here, the ALJ's interpretation of the evidence is supported by the record.  In his March 15, 2015, report, Dr. Menashe stated that Plaintiff "has a reported FEV1 of 1.9L (49% of predicted) and an FEV1/FEC ration of 0.48. . . . An alpha 1 antitrypsan level normal."  Tr. 281.  In her affidavit, Dr. Cates stated that Plaintiff had a "FEV1 of 1.5L (49% of predicted) FEV1/FVC - .48 Alpha 1 Antitrypsin - normal."  Tr. 289.  Dr. Cate appeared to be copying Dr. Menashe's report into her affidavit, but did not copy the FEV1 level accurately.  Therefore, this reason for rejecting Dr. Cate's opinion is supported by substantial evidence and meets the specific and legitimate standard.

Nonetheless, since the ALJ is to call a medical expert on remand to address

the date of onset, the ALJ is directed to reassess the weight given to all medical source opinions in the file and provide adequate reasons supported by substantial evidence for the weight each opinion is given.

**D.    Listing 3.02 prior to January 28, 2013**

Plaintiff asserts that the ALJ erred by not finding that Plaintiff met listing 3.02 prior to January 28, 2013.  ECF No. 15 at 10-12.  Plaintiff alleges that the record supports a finding that he met listing 3.02(a) as of April 21, 2011, based on Dr. Cate's affidavit stating he had a FEV1 of 1.5 or that the substantial decline in DLCO scores from May 23, 2011, to January 28, 2013, support a finding that he met listing 3.02(C)(1) prior to January 28, 2013.  *Id.*

Considering the ALJ is instructed to call a medical expert on remand to address the issue of onset date, the ALJ is instructed to revisit her step three findings in light of the medical expert's testimony and the weight provided to all medical opinions in the file.

**E.    Residual Function Capacity and Hypothetical Question**

Plaintiff argues that the ALJ erred by relying on testimony from the vocational expert based on a hypothetical question that did not reflect all of Plaintiff's limitations.  ECF No. 15 at 18-19.  The Plaintiff asserts that the ALJ failed to provide proper weight to Dr. Cate's opinion, and had the opinion been given proper weight, the residual function capacity presented to the vocational expert should have included additional limitations.  *Id.*

A claimant's residual function capacity is "the most [a claimant] can still do despite [his] limitations." 20 C.F.R. § 416.945(a); *see also* 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(c) (defining residual function capacity as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs").  In formulating a residual function capacity, the ALJ weighs medical and other source opinions and also considers the claimant's credibility and ability to perform daily activities.  *See*,

ORDER GRANTING PLAINTIFF'S MOTION . . . - 15

1  *e.g.*, *Bray*, 554 F.3d at 1226.

2      Considering the case is being remanded, in the event of a step four or five

3  determination, the ALJ is instructed to form a new residual function capacity in

4  light of testimony from a medical expert and a reweighing of the opinion evidence.

5  The ALJ is then to present the new residual function capacity to a vocational

6  expert.

7                                    **REMEDY**

8       Plaintiff argues that the ALJ's decision should be reversed and remanded

9  for an immediate award of benefits.  EFC No. 15 at 19-20.  The decision whether

10 to remand for further proceedings or reverse and award benefits is within the

11 discretion of the district court.  *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir.

12 1989).  The Court may award benefits if the record is fully developed and further

13 administrative proceedings would serve no useful purpose.  *Smolen*, 80 F.3d at

14 1292.  Remand for additional proceedings is appropriate when additional

15 proceedings could remedy defects.  *Rodriguez v. Bowen,* 876 F.2d 759, 763 (9th

16 Cir. 1989).  In this case, a medical expert's testimony is necessary to determine the

17 date of onset of Plaintiff's disability.  Therefore, further proceedings are necessary

18 for a proper determination to be made.

19      On remand, the ALJ is to elicit testimony from a medical expert regarding

20 the onset of Plaintiff's disability, reweigh the medical opinions in the file, reassess

21 Plaintiff's step three eligibility, and if a step four and five determination is

22 necessary, reassess Plaintiff's residual function capacity, taking into consideration

23 the testimony of the medical expert, the medical source opinions in the record, and

24 all other medical evidence of record relevant to Plaintiff's claim for disability

25 benefits.  Further, in the event of a step four or step five determination being

26 necessary for any of the alleged relevant period, the ALJ is directed to obtain

27 testimony from a vocational expert and take into consideration any other evidence

28 or testimony relevant to Plaintiff's disability claim.

ORDER GRANTING PLAINTIFF'S MOTION . . . - 16

**CONCLUSION**

Accordingly, **IT IS ORDERED:**

1.     Plaintiff's Motion for Summary Judgment, **ECF No. 15**, is **GRANTED, in part**, and the matter is **REMANDED** to the Commissioner for additional proceedings consistent with this Order.

2.     Defendant's Motion for Summary Judgment, **ECF No. 17**, is **DENIED**.

3.     Application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant.  **Judgment shall be entered for Plaintiff** and the file shall be **CLOSED**.

DATED January 20, 2016.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING PLAINTIFF'S MOTION . . . - 17